UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

       v.                                                                                    Crim. No. 2:01-cr-135

Beverly Holland

## REPORT AND RECOMMENDATION
(Doc. 99)

Beverly Holland ("Holland"), proceeding *pro se*, has moved pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct a judgment and sentence imposed in the United States District Court for the District of Vermont on March 23, 2003. (Doc. 99.) Following trial by jury, Holland was convicted of five counts of transportation of a minor with the intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a); two counts of transportation of another with the intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2421; and one count of conspiracy, in violation of 18 U.S.C. § 371. (Doc. 70.) Holland was sentenced by United States District Court Judge William K. Sessions III to a term of imprisonment of 235 months, to be followed by a 2-year term of supervised release, together with a total special assessment of $800. (*Id.*)

In her current motion, Holland alleges that she received ineffective assistance of counsel at the time of sentencing, and asks that the Court "reduce [her] sentence." (Doc. 99 at 13.) Concluding that the motion is filed beyond the statute of limitations governing § 2255 motions, and that it otherwise lacks substantive merit, I recommend the motion be DENIED.

**Background**

I. **Indictment and Trial**

Holland was charged in an eleven-count Superseding Indictment filed on August 29, 2002, arising out of her organization and management of an interstate prostitution ring.  Count 1 of the Superseding Indictment charged her with conspiracy to violate the Mann Act, 18 U.S.C. § 2421 *et seq.*, while Counts 2 through 11 charged her with substantive violations of the Mann Act.  (Doc. 34.)  Prior to trial, the Court ordered that Holland undergo a psychiatric evaluation to determine if she was competent to stand trial, and if she was insane at the time of the charged offenses.  (Doc. 17.)  Holland was subsequently evaluated by mental health professionals within the Federal Bureau of Prisons ("BOP").  After extensive testing, it was determined that she suffered from a Cognitive Disorder–Not Otherwise Specified,[1] an Anti-Social Personality Disorder, and a closed head injury.  (PSR ¶ 253)[2].  While the evaluation process was ongoing, Holland's prior counsel withdrew and Attorney Thomas Zonay was appointed to represent her.  Following the submission of the written evaluation, a competency hearing was held and

---

[1] The Diagnostic and Statistical Manual of Mental Disorders, (4th ed. 2000) ("DSM–IV") defines "Cognitive Disorder–Not Otherwise Specified" (294.9) as follows:

> This category is for disorders that are characterized by cognitive dysfunction presumed to be due to the direct physiological effect of a general medical condition that do not meet criteria for any of the specific deliriums, dementias, or amnestic disorders listed in this section and that are not better classified as Delirium Not Otherwise Specified, Dementia Not Otherwise Specified, or Amnestic Disorder Not Otherwise Specified. . . .  Examples include 1. Mild neurocognitive disorder: impairment in cognitive functioning as evidenced by neuropsychological testing or quantified clinical assessment, accompanied by objective evidence of a systemic general medical condition or central nervous system dysfunction . . . 2. Postconcussional disorder: following a head trauma, impairment in memory or attention with associated symptoms[.]

[2] References to the Presentence Report prepared by the United States Probation Office are in the form "(PSR ¶ )".

2

Judge Sessions found Holland to be competent to stand trial. No notice of an insanity defense was given.

Trial commenced on September 5, 2002. Counts 4 and 5 were dismissed by the Court at the close of the government's case. On September 10, 2002, the jury found Holland guilty on Counts 1–3, 6–9, and 11, and not guilty on Count 10. (Doc. 48.) The evidence at trial established that between 2000 and 2001, Holland had engaged in a scheme in which she induced young females from the Burlington, Vermont area to travel to New York City to work in a prostitution ring. Holland enticed the victims, some of whom were as young as fifteen years of age, to participate in her scheme by promising them incentives such as money, drugs, and shopping. She arranged for their transportation from Vermont to the Bronx, where she provided them with marijuana and alcohol, trained them to work as prostitutes, and monitored them while they engaged in prostitution in cars and apartments. At times, Holland lied to the victims' parents about the nature of their daughters' activities and her relationship with them. Holland used the street name "Candy," referred to the females she recruited as "Candy's Girls," and used that term on business cards. She informed victims who sought to return to Vermont that they would have to earn their way home by continuing to work as prostitutes.

## II.  Sentencing

In preparation for Holland's sentencing, an extensive PSR was prepared by the Probation Office, and the parties submitted sentencing memoranda. At the time of their commission, Holland's offenses were governed by the provisions of section 2G1.1 of the

United States Sentencing Commission Guidelines ("USSG").[3]  Pursuant to this section, the PSR calculated offense levels for each of the 12 victims identified in the Bill of Particulars.  For the four 15-year-old victims, the PSR recommended an offense level of 29.  This computation was obtained by taking the base offense level of 19 and adding four enhancements: a four-level enhancement because the offense involved a commercial sex act and the use of physical force, fraud, or coercion; a two-level enhancement because the offense involved a victim between the ages of 12 and 15; a two-level enhancement for unduly influencing a minor to engage in a commercial sex act; and a two-level enhancement for the use of accomplices.  For the other two minor victims and the six adult victims, the PSR recommended offense levels of 27 and 20, respectively.  Pursuant to grouping rules found at USSG §3D1.4, the PSR calculated the combined offense level by taking the group with the highest offense level, *i.e.*, 29, and adding five additional levels based on the remaining groups for a total offense level of 34.  The PSR noted that Holland had 50 prior convictions for prostitution and solicitation, three drug convictions, and two convictions for disorderly conduct.  All but one of these offenses had resulted in a sentence of less than 60 days.  Consequently, the PSR assigned Holland six criminal-history points, which placed her in criminal history category III.  The applicable guideline range for offense level 34 and criminal history category III was 188 to 235 months.  The government's sentencing memorandum accepted the findings of the PSR and the government urged the Court to impose a sentence within the guideline range.

---

[3]  The 2002 version of the Sentencing Guidelines was applied.

Attorney Zonay raised two objections to the PSR's guideline calculations. (Doc. 68.) He first argued that it was inappropriate to apply the two-level enhancement for undue influence of minors under §2G1.1(b)(4)(B). (*Id.* at 5.) Specifically, he argued that because Holland's psychological deficiencies and her intellectual and social abilities were impaired, she was not in a superior position to the minors and was therefore unable to exert undue influence. He next argued that with respect to eight of the victims, the evidence failed to support application of the four-level enhancement for use of force, fraud, or coercion. (*Id.* at 7.)

Relying upon USSG §5H1.3, Attorney Zonay also sought a downward departure from the applicable sentencing-guideline range based upon Holland's mental condition and the totality of the circumstances. Utilizing the findings set forth in the BOP's competency evaluation, Zonay argued that Holland had grown up in a broken and abusive home, that she had left home at the age of 12, that she had dropped out of school in the 8th grade, and that she had worked for years as a street prostitute believing it was the only way for her to survive. Zonay further contended that Holland had received a bullet wound to the head, had suffered a severe head injury as a result of an automobile accident, and that she had a borderline IQ, a personality disorder, and other mental deficiencies. These conditions and impairments were outlined in detail in the PSR. Zonay argued that as a result of these issues, Holland believed that she was helping the young women who were the victims of her conduct, and that all of these factors, when viewed in combination, justified a downward departure from the applicable sentencing-guideline range. (Doc. 68 at 8–9.)

Sentencing was held on March 21, 2003. The Court accepted the conclusions of the PSR and rejected each of Holland's guideline challenges. As to her argument that the undue-influence enhancement should not apply, the Court observed that Holland was considerably more sophisticated and more than twenty years older than most of her victims. (Doc. 74.) The Court also denied Holland's motion for a downward departure, concluding that her difficult upbringing and mental deficiencies were not sufficiently strong mitigating factors to warrant a lesser sentence. The Court noted that her purportedly borderline IQ was "totally inconsistent with her street intelligence and her ability to influence other people[.]" (*Id.* at 18.) The Court also observed that Holland's diagnosis of an anti-social personality disorder could signal future dangerousness. (*Id.* at 19.) The Court stated that it had considered an *upward* departure because the number of victims and Holland's extensive criminal history were both discounted by the Guidelines. Ultimately, however, it determined that the range of 188 to 235 months was sufficient, and a sentence at the high end of the range, 235 months was imposed. In later proceedings, as noted below, the Court specifically stated that it had given consideration to the impact of Holland's crimes on the vulnerable young victims, the detrimental effect on the community, and Holland's complete denial of responsibility in selecting this sentence. (Doc. 94)

### III.   Direct Appeal and Remand by the Court of Appeals

Holland appealed her convictions to the Second Circuit, arguing that this Court erred in instructing the jury, excluding certain evidence, and denying her motions for judgments of acquittal. While the appeal was pending, the United States Supreme Court

6

decided *Blakely v. Washington*, 542 U.S. 296 (2004), which held that the State of Washington's sentencing-guideline system was unconstitutional. Attorney Zonay filed a supplemental brief in the Court of Appeals arguing that Holland's sentencing had violated the principles set forth in *Blakely*. On August 23, 2004, the Second Circuit issued an opinion rejecting Holland's challenges to her convictions and affirming the judgment of this Court. *United States v. Holland*, 381 F.3d 80 (2d Cir. 2004). With regard to Holland's challenge to her sentencing, the court observed that "'[u]nless and until the Supreme Court rules otherwise, the law in this Circuit remains' that the federal Sentencing Guidelines are constitutional." *Id.* at 82, n.2 (quoting *United States v. Mincey*, 380 F.3d 102, 106 (2d Cir. 2004). Nevertheless, in light of the fact that *United States v. Booker*, a challenge to the Federal Guidelines, was pending before the Supreme Court at that time, the Second Circuit held the mandate in this case pending the decision in *Booker*. *Id.* at 88.

The Supreme Court's decision in *Booker*, issued on January 12, 2005, held that mandatory application of the Guidelines was unconstitutional. *United States v. Booker*, 543 U.S. 220 (2005). In light of *Booker* and the Second Circuit's subsequent decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), the Circuit issued an order remanding Holland's case to this Court "for further proceedings in conformity with *Crosby*." (Doc. 87). The remand order did not affect the Second Circuit's affirmance of Holland's convictions. *See id.* (stipulating that the previous opinion affirming this Court's judgment "is hereby made part of this order and is fully effective, except to the extent that it is inconsistent with the present remand in conformity with *Crosby*").

7

Following remand to this Court, Attorney Zonay filed a supplemental sentencing memorandum in which he renewed his request for the Court to consider Holland's difficult upbringing and mental-health issues and, consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), to impose a sentence of 120 months.  (Doc. 91 at 3–4.)  Zonay included with his submission a letter from Holland in which she described her full-time employment while incarcerated, her pursuit of counseling and educational opportunities at the federal facility, and her acceptance of responsibility for her crimes.  (Doc. 91-1.)  Holland included certificates of completion as evidence of her participation in two drug-counseling programs, two mental-health-counseling programs, a physical-fitness program, and her good behavior while incarcerated.  (*Id.* at 2–9.)

In a 14-page Memorandum and Order dated July 11, 2006, Judge Sessions carefully reviewed the sentencing factors set forth in 18 U.S.C. § 3553(a) and concluded that resentencing was not warranted.  Full consideration of the § 3553(a) factors led Judge Sessions to conclude that if, as directed by the *Booker* ruling, the Sentencing Guidelines had been advisory at the time of the original sentencing, the Court would have imposed a sentence materially equivalent to the existing sentence.  The Court again rejected the mental-health issues of the defendant as a basis for a downward departure.  (Doc. 94.)

Attorney Zonay filed a direct appeal of the decision to not resentence Holland.  (Doc. 95.)  He subsequently filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and the Second Circuit granted the government's motion for summary affirmance on December 22, 2006, and the Mandate issued on January 12, 2007.  (Doc. 98.)

## IV. The Instant Motion

On August 12, 2013, Holland filed her § 2255 motion alleging that Attorney Zonay rendered ineffective assistance of counsel during sentencing. (Doc. 99.) Holland raises three specific claims. First, she argues that Attorney Zonay was ineffective "when he failed to request the court[] to order a pre[]sentence psychiatric evaluation" in support of a downward departure from the applicable sentencing-guideline range due to her diminished capacity, claiming that she has "been diagnosed with Schizoaffective Disorder-Bi Polar Type." (*Id.* at 4.) Holland's next argument is related to her first in that she contends Zonay was ineffective in not calling an expert witness to describe her cognitive impairments at the time of her sentencing. (*Id.* at 5.) Finally, Holland claims Zonay was ineffective when he failed to seek a "merger" of the conspiracy conviction with the convictions for the substantive offenses. (*Id.* at 7.)

The government opposes the motion, asserting that it is barred by the one-year statute of limitations which governs § 2255 motions. The government also argues that the motion is meritless. (Doc. 100.)

## Discussion

## I. Statute of Limitations and Equitable Tolling

The government first argues that Holland's motion is barred by the one-year statute of limitations. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires that, except under certain circumstances not relevant here, a § 2255 petition must be filed within one year from the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255(f). The Supreme Court has ruled that a judgment of

9

conviction becomes final when the Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003).  The Second Circuit issued its decision on December 22, 2006, and the time for filing a petition for writ of certiorari expired 90 days later, on March 22, 2007.  *Id.* at 525.  Accordingly, a motion to vacate under § 2255 was due on or before March 22, 2008.  Holland's motion, filed more than five years later, is therefore barred unless there is a reason to equitably toll the limitations period.

The one-year AEDPA-filing limitation is not jurisdictional and, under certain circumstances, may be equitably tolled.  *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010); *accord Rivas v. Fischer*, 687 F.3d 514, 538 (2d Cir. 2012).  To warrant equitable tolling, Holland must show "(1) that [s]he has been pursuing h[er] rights diligently, and (2) that some extraordinary circumstance stood in h[er] way and prevented timely filing." *Rivas*, 687 F.3d at 538 (citation omitted).  The determination that circumstances were "extraordinary" is "based not on how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather, how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011) (citation omitted).  As a general matter, "a garden variety claim of excusable neglect," *Rivas*, 687 F.3d at 538 (citation omitted), and the "usual problems inherent in being incarcerated" are insufficient to warrant equitable tolling.  *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003).

Mental illness may operate as an extraordinary circumstance.  *See, e.g.*, *Bolarinwa v. Williams*, 593 F.3d 226, 231–32 (2d Cir. 2010); *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000); *Canales v. Sullivan*, 936 F.2d 755, 756 (2d Cir. 1991).  However, "mental illness does not toll a filing deadline *per se*."  *Bolarinwa*, 593 F.3d at 232.  Instead, the determination of whether mental illness prevented timely filing is "'highly case[]specific.'"  *See id*. at 232 (quoting *Brown v. Parkchester S. Condos*., 287 F.3d 58, 60 (2d Cir. 2002)).  "[I]n order to justify tolling of the AEDPA one-year statute of limitations due to mental illness, a habeas petitioner must demonstrate that her particular disability constituted an 'extraordinary circumstance' severely impairing her ability to comply with the filing deadline, despite her diligent efforts to do so."  *Bolarinwa*, 593 F.3d at 232.  More precisely, the petitioner must provide "a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights."  *Boos*, 201 F.3d at 185.  Finally, for a petitioner to have acted with due diligence, she must have acted with "reasonable diligence" throughout the entire period for which tolling is sought.  *Harper v. Ercole*, 648 F.3d 132, 138–39 (2d Cir. 2011).

      Holland claims that she failed to timely file the instant petition because she suffers from Schizoaffective Disorder - Bipolar Type.  (Doc. 99 at 12.)  She has included with her motion one page of what appears to be a two-page BOP form dated June 11, 2013 (Doc. 99-1).  There, a BOP psychiatrist wrote that Holland has reported to staff that she has a history of psychosis and symptoms of depression.  The form reflects no clinical assessment, study, or testing to evaluate her claim of a history of psychosis.  Instead,

11

based on Holland's self-report, the psychiatrist listed Schizoaffective Disorder - Bipolar Type as a "diagnostic impression." Moreover, no evidence is presented to establish *when* or *how* this impairment prevented Holland from filing the petition for over four years beyond the one-year AEDPA limitations period. Holland's claimed impairments are also inconsistent with the information she presented at her resentencing to establish that she had successfully completed BOP programing courses. Although these accomplishments were attained prior to her resentencing, they are evidence of Holland's ability to work, take classes, and exercise overall good judgment.

Moreover, Holland has failed to show how the disability was causally related to her failure to timely file the instant motion. *See, e.g.*, *Victorial v. Burge*, 477 F. Supp. 2d 652, 655 (S.D.N.Y. 2007) (petitioner's bipolar disorder did not warrant equitable tolling where petitioner failed to demonstrate that the illness "affected his ability to act with due diligence during the time period at issue" or was causally connected to his failure to timely file his petition); *Lee v. Superintendent, Attica Corr. Facility*, No. 05-CV-5706(ARR), 2006 WL 229911, at *2 (E.D.N.Y. Jan. 31, 2006) ("[P]etitioner's allegations do not demonstrate that these health problems rendered him unable to pursue his legal rights during the one-year limitations period."); *Williams v. Phillips*, No. 02 CV 5882(SJ), 2005 WL 1072711, at *2 (E.D.N.Y. Apr. 29, 2005) (petitioner's claim of mental impairment and proof that medical tests were conducted during the relevant time period did not constitute adequate evidence of a "disabling condition" warranting equitable tolling); *Simpson v. Greene*, No. 03 Civ.6323 GEL, 2003 WL 22999489, at *3 (S.D.N.Y. Dec. 22, 2003) (court declined to toll statute of limitations where petitioner's

medical records provided insufficient evidence of "insurmountable problems in [his] mental status"); *Barbosa v. United States*, No. 01 Civ.7522(JFK), 2002 WL 869553, at *2–*3 (S.D.N.Y. May 3, 2002) ("conclusory" allegations of physical infirmity, coupled with medical reports indicating that petitioner did "at some point suffer[] from physical ailments" did not warrant equitable tolling); *Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 173 (S.D.N.Y. 2000) ("[A] petitioner must allege more than the mere existence of physical or mental ailments to justify equitable tolling.  A petitioner has the burden to show that these health problems rendered him unable to pursue his legal rights during the one-year time period.") (collecting cases).

In sum, Holland's present assertions of Schizoaffective Disorder - Bipolar Type do not provide a basis for equitable tolling because she has failed to demonstrate that her mental condition prevented her from pursuing her legal rights since January 2006.  The Court should therefore find that her § 2255 motion is barred as untimely.

## II.     Ineffective Assistance of Counsel

Even if the Court were to find that Holland's petition is not barred by the one-year statute of limitations, her claim of ineffective assistance of counsel should be denied as meritless.  A defendant in criminal proceedings has a right under the Sixth Amendment to effective assistance from her attorney at all critical stages in the proceedings, including sentencing.  *See, e.g.*, *Glover v. United States*, 531 U.S. 198, 202–04 (2001); *Mempa v. Rhay*, 389 U.S. 128, 134 (1967).  In order to succeed on a claim of ineffective assistance of counsel, a claimant must meet the two-pronged test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

13

> (1) [s]he "must show that counsel's performance was deficient," 466 U.S. at 687, so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," *id.* at 690, and (2) [s]he must show "that the deficient performance prejudiced the defense," *id*. at 687, in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

*Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011). "The IAC claim must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." *Id.* at 85. A reviewing court should be "'highly deferential'" to counsel's performance, because "'it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.'" *Pratt v. Greiner*, 306 F.3d 1190, 1196 (2d Cir. 2002) (quoting *Strickland*, 466 U.S. at 689). With respect to her claim of ineffective assistance at sentencing, Holland must show a reasonable probability that, but for counsel's substandard performance, she would have received a less severe sentence. *See generally Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012); *Glover*, 531 U.S. at 203; *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).

Here, Holland's claims do not satisfy either the performance or the prejudice prongs of *Strickland*. With regard to the deficient performance prong, the record reveals that Attorney Zonay repeatedly urged the District Court to consider Holland's mental impairments as outlined in the BOP evaluation, and to impose a significantly shorter sentence than the one called for by the Sentencing Guidelines. Judge Sessions had before him Holland's mental-health history and the diagnosis of a Cognitive Disorder–Not Otherwise Specified and an Anti-Social Personality Disorder. Judge Sessions thoroughly

14

considered these impairments, and concluded first at the original sentencing, and then again in the proceedings following remand, that Holland's mental-health conditions did not warrant a downward departure from the Sentencing Guidelines nor an adjustment of her sentence under § 3553(a).  *See, e.g.*, *Abramov v. United States*, No. 10-CV-3615 (SLT), 2013 WL 145672, at *6 (E.D.N.Y. Jan. 14, 2013) (denying ineffective-assistance-of-counsel claim where court had "ample access to [defendant's] mental health history" and counsel "repeatedly and emphatically requested that the Court . . . take mental health into account for sentencing purposes").  Perhaps of equal significance, Holland fails to offer any evidence that she suffered from a Schizoaffective Disorder when she was sentenced.  *See United States v. Tracey*, 669 F. Supp. 2d 333, 335 (W.D.N.Y. 2009) ("The record must demonstrate some evidence that there was such a disease or illness for counsel to be faulted.").  In sum, Holland has failed to show that Attorney Zonay's conduct fell outside that range of professionally competent assistance.

Concerning the prejudice prong of *Strickland*—whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different—the Second Circuit generally "requires some objective evidence other than defendant's assertions to establish prejudice." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (citing *United States v. Gordon*, 156 F.3d 376, 380–81 (2d Cir. 1998) (per curiam)).  Here, Holland offers no such evidence.  Specifically, she has failed to demonstrate a reasonable probability that additional evidence or argument with respect to mental impairment would have dictated a different result.  Indeed, Judge

15

Sessions considered her diagnosed impairments, and twice indicated that the sentence imposed was an appropriate one.

In a related claim, Holland asserts that Attorney Zonay was ineffective in failing to call an expert witness to support a downward departure based upon her mental impairments. The Second Circuit has noted that "there is no *per se* rule that requires trial attorneys to seek out an expert." *Gersten v. Senkowski*, 426 F.3d 588, 609 (2d Cir. 2005) (citation omitted). In general, whether or not to hire an expert is the type of strategic choice by counsel that may not be second-guessed on habeas corpus review. *See United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) ("[C]ounsel's decision as to 'whether to call specific witnesses–even ones that might offer exculpatory evidence–is ordinarily not viewed as a lapse in professional representation.'") (citations omitted), *cert. denied*, 532 U.S. 1007 (2001); *see generally Strickland,* 466 U.S. at 689 (actions or omissions by counsel that "might be considered sound trial strategy" do not constitute ineffective assistance) (citations omitted); *but see Pavel v. Hollins*, 261 F.3d 210 (2d Cir. 2001) (finding that trial counsel's failure to call medical expert in sexual-abuse case involving a child victim where medical evidence was crucial, considered cumulatively with other errors, constituted ineffective assistance). Holland's contention that her sentence would have been different had Zonay retained an expert witness is based upon nothing more than her own speculative assertions. Significantly, she has not come forward with affidavits or other evidence showing that there was, in fact, an expert witness who would have testified that she suffered from Schizoaffective Disorder-Bi Polar Type when she was sentenced.

Finally, Holland asserts that Zonay rendered ineffective assistance of counsel when he failed to ask the Court at sentencing to "merge" the count of conviction for conspiracy with the substantive transportation counts. Holland argues, without analysis, that a "merger" of the conspiracy count would have yielded a sentence of 180 months as opposed to 235 months. This claim is similarly meritless.

It is beyond dispute that the crime of conspiracy is an offense separate and distinct from the substantive crime that is the object of the conspiracy, and may be punished separately. *United States v. Jimenez Recio*, 537 U.S. 270, 274‑76 (2003). Holland perhaps is suggesting that the Sentencing Guidelines require a merger of the offense of conspiracy and the underlying substantive offenses for which she was convicted in the offense-level calculation. She is, in a sense, correct in her assertion that a merger was required. In fact, the sentencing transcript reveals that at sentencing Judge Sessions accomplished just that: a merger of the conspiracy count of conviction with each substantive offense. (Doc. 74 at 36‑37.) As explained in the PSR, for purposes of the sentence calculations, the conspiracy counts and substantive counts were grouped for each victim pursuant to USSG §3D1.2(b) because they involved "the same victim and two or more acts or transactions connected by a common criminal objective." (PSR ¶ 62.) Accordingly, Holland cannot show that Attorney Zonay committed any error, much less a prejudicial one, as the complicated rules governing the grouping of offenses were adhered to properly.

### III.     No Evidentiary Hearing is Required

A hearing is not necessary to adjudicate a Section 2255 motion if petition and the record "conclusively show" that the defendant is not entitled to relief.  28 U.S.C. § 2255(b).  Rather, "[i]t is within the district court's discretion to determine whether a hearing is warranted" or to rely on "a wide variety of tools" to develop the record if necessary.  *Pham*, 317 F.3d at 180, 184 (citations omitted): *see also Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (hearing not required where it "plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief") (citation and internal quotation marks omitted).  Here, the files and records conclusively show that Holland is not entitled to the relief that she seeks.  Accordingly, no evidentiary hearing is required.

### Conclusion

Based on the foregoing, I recommend that Holland's motion to vacate, correct or set aside the judgment (Doc. 99) be DENIED.

Dated at Burlington, in the District of Vermont, this 16th day of October, 2013.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).